IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

:
REBECCA LOPEZ-DUPREY
                                    :

    v.                              :   Civil Action No. DKC 23-2812

                                    :
MGM NATIONAL HARBOR, LLC
                                    :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this disability-based employment discrimination case are the motion for summary judgment filed by Defendant MGM National Harbor, LLC (ECF No. 24) and the motion for partial summary judgment filed by Plaintiff Rebecca Lopez-Duprey (ECF No. 26).  The issues have been briefed, and the court now rules, no hearing being deemed necessary.  Local Rule 105.6.  For the following reasons, both motions will be denied.

**I.    Background**

   **A. Procedural Background**

Plaintiff filed a six count complaint on October 18, 2023 (ECF No. 1).  Counts one and two allege failure to accommodate under the Americans with Disability Act of 1990, ("ADA"), 42 U.S.C. § 12101, *et seq.*, and the Maryland Fair Employment Practices Act, (MFEPA), Md. Code Ann., State Gov't §§ 20-601 *et seq.*; counts three

and four allege disability discrimination under the same two acts; and counts five and six allege retaliation under the same two acts. In violation of Local Rule 105.2.c, two separate motions for summary judgment were filed.  First, on May 9, 2024, Defendant filed a motion for summary judgment (ECF No. 24), and Plaintiff responded on May 22, 2024 (ECF No. 25).  On May 31, 2024, Defendant filed a reply in support of its motion for summary judgment (ECF No. 29).  Plaintiff filed separately a partial motion for summary judgment as to counts I and II on May 28, 2024 (ECF No. 26), and on June 25, 2024, Defendant filed a response in opposition to Plaintiff's motion for summary judgment (ECF No. 32).

### B. Factual Background[1]

In November 2016, Plaintiff began working as a cocktail server for Defendant at the MGM Hotel and Casino in Oxon Hill, Maryland. Plaintiff, like other cocktail servers, was required to wear black high heels as part of her work uniform.  Plaintiff contends that in January 2017, she "requested a reasonable accommodation to wear flat (non-heeled) shoes at work" and that her request was denied. (ECF No. 26, at 3-4).[2]  Defendant maintains it has no record of a January 2017 accommodation request.   (ECF No. 32-1, at 8).

---

[1] Unless otherwise noted, the following facts are undisputed.

[2] Pin cites to documents filed on the court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

Plaintiff alleges she "continued to request reasonable accommodation to wear flat shoes to work but it was continually denied." (ECF No. 26, at 4).

On July 1, 2019, Defendant sent a "Request for Information from Health Care Provider" to Plaintiff's doctor stating:

> MGM NATIONAL HARBOR employs [Plaintiff]. MGM NATIONAL HARBOR has recently been alerted to the possibility that [Plaintiff] may suffer from a disability, as that term is defined by the Americans with Disabilities Act, as amended (the "ADA"). Your assistance is appreciated in providing information to assist the Company in determining whether the individual is entitled to a reasonable accommodation in employment and the nature of any such accommodations.
>
> Please review the employee's job description which is attached hereto, complete the questions contained in the medical certification form also attached hereto, and sign this form.

(ECF No. 26-2, at 1). On July 2, 2019, Plaintiff's doctor filled out the form Defendant provided. *(Id*. at 2-6). Plaintiff's doctor explained that Plaintiff had "Equinus Deformity" and "Achillis Tendinitis," and that Plaintiff should "avoid heels" and "wear good supportive shoes" to aid her in performing her job duties. *(Id*. at 2-5). On August 30, 2019, Defendant granted Plaintiff an accommodation to "wear flats/good support shoes instead of heels[.]" (ECF No. 26-3, at 1).

Plaintiff alleges that, per her accommodation, she wore "Skechers-style black shoes to work" from "July 2019 to December

3

2021[.]" (ECF No. 26 ¶ 16). Defendant does not dispute that Plaintiff wore "Skechers-style black shoes," but contends that her conduct was "contrary to the accommodation granted and in violation of the dress policy." (ECF No. 32-1, at 10).

Sometime in December 2021 or January 2022, Defendant issued a memo concerning "shoe standards" for beverage employees. (ECF No. 26-10, at 1). The memo provided a description of appropriate shoes for various employee positions and stated "[s]hoes that are not approved are: Ballerinas, Birkenstocks, bedroom slippers, wedge heels, flip flops, sling backs, crocs, <u>any slipper style</u>, sneakers, tennis shoes or shoes with excessive strapping or ornamentation." (*Id.*). The memo also provided images of several approved shoes, including three non-heeled shoes for employees with ADA accommodations. (*Id.*). The memo stated that employees needed to "have the correct shoes no later than January 3, 2022" and explained that "[f]ailure to adhere to the appearance standards may result in disciplinary action up to and including separation." (*Id.*).

On March 16, 2022, Plaintiff "receiv[ed] her second Written discipline under Job Performance" because she "did not have the approved shoes on during her scheduled shift on March 16, 2022[,]" in "violation of National Harbor Rules and Conduct Standards." (ECF No. 26-6, at 1).

On April 22, 2022, Plaintiff received medical treatment. Her doctor provided her with a note that said "[p]atient has achilles tendonitis and equinus secondary to poor shoegear that has caused contracture of the patient's achilles tendon. Please allow patient to wear previously approved sketcher like soft top shoes without a heel and/or similar style to them permanently due to patient's foot condition." (ECF No. 26-5, at 2).[3] On April 26, 2022 Plaintiff commented on her March 16, 2022 disciplinary action, stating:

> I am being forced to wear shoes against doctor[']s orders per Cami Johnson and Joe Faruggio who claim I don't have an accommodation. Cami Johnson and Janae Madric deleted my A[DA] documents from the system. Cami Johnson began to harass and discipline me forcing me to wear shoes against my doctor[']s orders that were previously approved by Janae Then once I provided them proof I was still disciplined.

(ECF No. 26-6, at 1).

On May 12, 2022, Plaintiff was terminated. In the termination letter, Defendant explained:

> Separation for multiple violations of MGM National Harbor General Rules of Conduct including but not limited to:

---

[3] Plaintiff alleges that she provided Defendant with the doctor's note shortly thereafter (ECF No. 26, at 7-8), but Defendant asserts that it did not receive the note until it was forwarded by Plaintiff's union representative on July 18, 2022. (ECF No. 32, at 15).

5

> - GRC #40 — Violation of on-the-job rules, including rules, regulations and procedures of each department.
> - GRC #43 — Disregard or violation of company or departmental rules, procedures or polic[i]es.
> - Departmental appearance standards[.]
>
> Specifically, employee has been progressively disciplined for violating the company's appearance standards. The final incident occurred on March 21, 2022, when the employee wore shoes which violated the appearance standards.

(ECF No. 26-8, at 2). On July 18, 2022, Plaintiff's doctor's note was forwarded to Defendant by Plaintiff's union representative. (*Id.* at 1).

Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Maryland Commission on Civil Rights ("MCCR") on May 14, 2022. (ECF No. 24-2 at 27, 29). On July 27, 2023, the EEOC provided Plaintiff a Notice of her Right to Sue. (*Id.* at 31-34).

On October 25, 2023, one week after the complaint in this case was filed, Plaintiff filed for Chapter 11 Bankruptcy in the United States Bankruptcy Court for the District of Maryland. (ECF No. 24-3). In Plaintiff's Voluntary Petition for Individuals Filing for Bankruptcy ("Bankruptcy Petition"), Plaintiff declared the present lawsuit against Defendant as an exempt asset valued at "$0.00." (*Id.* at 19). Her plan was confirmed on March 8, 2024.

(ECF No. 24-6, at 2). On May 14, 2024, Plaintiff amended the value of this lawsuit to "Unknown." (ECF No. 25-2, at 8).

## II. Standard of Review

A court may grant summary judgment only if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting former Fed.R.Civ.P. 56(e)) (alteration in original). "A mere scintilla of proof . . . will not suffice to prevent summary judgment[.]" *Peters v. Jenney*, 327 F.3d 307, 314 (4th Cir. 2003). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249–50 (citations omitted). At the same time, the court must construe the facts that are presented in the light most

favorable to the party opposing the motion.  *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Emmett*, 532 F.3d at 297.

**III. Analysis**

    **A. Defendant's Motion for Summary Judgment**

Defendant argues that because Plaintiff valued this lawsuit at zero dollars in her Bankruptcy Petition, the doctrine of judicial estoppel precludes her from proceeding with her claims in the present litigation.  (ECF No. 24-1, at 1-2).

This court has explained:

> "Judicial estoppel precludes a party from adopting a position that is inconsistent with a stance taken in prior litigation." *Minnieland Private Day Sch., Inc. v. Applied Underwriters Captive Risk Assurance Co., Inc.*, 867 F.3d 449, 457 (4th Cir. 2017) (quoting *John S. Clark Co. v. Faggert & Frieden, P.C.*, 65 F.3d 26, 28 (4th Cir. 1995)); see *Martineau v. Wier*, 934 F.3d 385, 393 (4th Cir. 2019); *Zinkand v. Brown*, 478 F.3d 634, 638 (4th Cir. 2007). An equitable doctrine, judicial estoppel is "designed to 'protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment.'" *Martineau*, 934 F.3d at 393 (quoting *New Hampshire v. Maine*, 532 U.S. 742, 749-50, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001)); see *Folio v. City of Clarksburg*, 134 F.3d 1211, 1217 (4th Cir. 1998) (observing that judicial estoppel "exists to prevent litigants from playing 'fast and loose' with the courts").

*Angelini v. Balt. Police Dep't.*, 464 F.Supp.3d 756, 783 (D.Md. 2020).  Judicial estoppel is appropriate only when,

> (1) the party sought to be estopped [is] . . . seeking to adopt a position that is inconsistent with a stance taken in prior litigation; (2) the position sought to be estopped [is] . . . one of fact rather than law or legal theory; (3) the prior inconsistent position [was] . . . accepted by the court; and (4) the party sought to be estopped . . . intentionally misled the court to gain unfair advantage.

*Minnieland*, 867 F.3d at 458 (quoting *Lowery v. Stovall*, 92 F.3d 219, 223-24 (4th Cir. 1996) (internal quotation marks omitted)).

Defendant contends that Plaintiff's failure to list a dollar amount in her Bankruptcy Petition precludes her from bringing her claims in this litigation. (ECF No. 24-1, at 1-2). Plaintiff responds by distinguishing the cases cited by Defendant and by arguing that she amended her Bankruptcy Petition to change the value of the lawsuit asset from zero to "unknown." (ECF No. 25).

Plaintiff filed her Bankruptcy Petition on October 25, 2023, and she valued this lawsuit at zero dollars, which is less than she seeks in this lawsuit. (ECF No. 24-3, at 1; 15). Defendant has not shown that judicial estoppel applies in this situation because there are disputes as to several factors, including whether a court accepted the assertion and whether Plaintiff valued this lawsuit at zero dollars intentionally to mislead the court.

"[J]udicial acceptance means only that the first court has adopted the position urged by the party . . . as part of a final disposition." *Lowery*, 92 F.3d at 224-25 (quoting *Edwards v. Aetna*

9

*Life Ins. Co.*, 690 F.2d 595, 599 n.5 (6th Cir. 1982)). Plaintiff listed this lawsuit as an exempt asset on her Bankruptcy Petition pursuant to Md. Code Ann. Cts. & Jud. Proc. § 11-504, which provides in relevant part:

> (b) The following items are exempt from execution on a judgment:
> . . .
> (2) Except as provided in subsection (i) or this section, money payable in the event of sickness, accident, injury, or death of any person, including compensation for loss of future earnings. This exemption includes but is not limited to money payable on account of judgments, arbitrations, compromises, insurance, benefits, compensation, and relief. Disability income benefits are not exempt if the judgment is for necessities contracted for after the disability is incurred.

Md. Code Cts. & Jud. Proc. § 11-504(b)(2). The meaning of "injury" under section 11-504(b)(2) has been construed broadly, and likely includes Plaintiff's discrimination claims. *See Niedermayer v. Adelman*, 90 B.R. 146 (D.Md. 1988) ("[I]n the absence of a restriction in the Maryland statute, claims for injury of the person encompass claims for damage to his psyche, including mental anguish and damage to reputation, and they are, therefore, exempt."). A bankruptcy judge in Virginia reasoned from that interpretation that a similarly worded exemption applied to a Title VII gender discrimination action. *In re Webb*, 210 B.R. 266 (E.D.Va. 1997).

10

If Plaintiff's claims in this action are exempt, their value would be immaterial because the value of an exempt asset has no practical effect on Plaintiff's bankruptcy plan. Defendant has not shown, then, that the Bankruptcy Court would have "accepted" Plaintiff's valuation.

Furthermore, "judicial estoppel applies only when 'the party who is alleged to be estopped intentionally misled the court to gain unfair advantage,' and not when 'a party's prior position was based on inadvertence or mistake.'" *Martineau*, 934 F.3d at 393 (quoting *John S. Clark co. v. Faggert & Frieden, P.C.*, 65 F.3d 26, 29 (4th Cir. 1995)). "Whether the equitable doctrine of judicial estoppel should be invoked depends on the 'specific factual context[ ]' of a case, rather than 'any general formulation' or 'inflexible' rule or standard." *Id.*, at 394 (quoting *New Hampshire v. Maine*, 532 U.S. 742 at 750–51 (2001) (citations omitted)).

Plaintiff acknowledges that she listed the value of this lawsuit at zero dollars. Plaintiff explains that she has since amended her Bankruptcy Petition to change the value of the lawsuit from "$0.00" to "unknown" because she does not know the value of the lawsuit. (ECF No. 25-2, at 5). Plaintiff also notes that the lawsuit is listed as exempt property on both the original and amended Bankruptcy Petitions and that neither the trustee nor the Defendant have challenged the exemption. (ECF No. 25, at 3).

11

Defendant argues Plaintiff's amendment shows "further bad faith" because Plaintiff only "amended her Bankruptcy Petition after receiving notice" of Defendant's motion for summary judgment. (ECF No. 29, at 5).[4]

The evidence is not as "clear" as Defendant may wish. There is nothing in the record to show that the plan would not have been approved if the "unknown" amount were in the petition instead of "$0.00," particularly if the asset is exempt regardless. Further, the inference that Defendant seeks to draw, i.e., that the valuation was "intentional" is not the only one available. Rather, it is possible that Plaintiff inserted "$0.00" because she did not know how much was likely if she succeeded. The court must, of course, draw all reasonable inferences in favor of the party opposing summary judgment. Accordingly, Defendant's motion will be denied.

**B. Plaintiff's Motion for Partial Summary Judgment**

Plaintiff alleges that Defendant violated the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and the

---

[4] Defendant argues in the alternative that Plaintiff "failed to disclose her counsel – either her original counsel or her current counsel – as creditors in her Bankruptcy proceeding, meaning that she has represented to the Bankruptcy Court that she does not owe (and her counsel is not entitled to) any attorneys' fees and costs." (ECF No. 29, at 3). The failure to list a creditor only affects the discharge of the debt owed, it has no bearing on Plaintiff's ability to seek attorneys' fees in this case. 11 U.S.C. § 523(a)(3).

Maryland Fair Employment Practices Act ("MFEPA"), Md. Code Ann., State Gov't §§ 20-601 *et seq.*, when it failed to provide her reasonable accommodations. (ECF No. 26). Specifically, Plaintiff asserts that Defendant "prohibited the very accommodation . . . Plaintiff needed, sneaker type footgear." (ECF No. 26, at 12).

The ADA and MFEPA prohibit employers from discriminating on the basis of disability. 42 U.S.C.A. § 12112(a); Md. Code Ann., State Gov't § 20-606(a), amended by Discrimination—Military Status—Prohibition, 2024 Maryland Laws Ch. 322 (H.B. 598). "The MFEPA contains functionally identical prohibitions and is evaluated under the same framework as the Americans with Disabilities Act[.]" *Teel v. Md. Nat. Treatment Sols., LLC*, No. 23-cv-1694-RDB, 2024 WL 1075421, at *4 (D.Md. Mar. 12, 2024) (citing *Miller v. Md. Dep't of Nat. Res.*, 813 F.App'x 869, 874 (4th Cir. 2020); *Peninsula Reg'l Med. Ctr. v. Adkins*, 448 Md. 197, 218-19 (Md. 2016)).

To establish a prima facie case for failure to accommodate under the ADA or the MFEPA, a plaintiff must show:

> (1) that [she] was an individual who had a disability within the meaning of the statute; (2) that the employer had notice of [her] disability; (3) that with reasonable accommodation [she] could perform the essential functions of the position . . . ; and (4) that the [employer] refused to make such accommodations.

13

*Wilson v. Dollar Gen. Corp.*, 717 F.3d 337, 345 (4th Cir. 2013) (quoting *Rhoads v. Fed. Deposit Ins. Corp.*, 257 F.3d 373, 387 n.11 (4th Cir. 2001) (internal quotation marks omitted)); *Adkins v. Peninsula Reg'l Med. Ctr.*, 224 Md.App. 115, 139 (2015) (using ADA cases to interpret the MFEPA).

Defendant only disputes the final element. Defendant contends it "granted Plaintiff the only accommodation request she ever made," "Plaintiff broke down the interactive process," and "even assuming Plaintiff made another request for accommodation . . . [Defendant] did not have to grant Plaintiff the particular accommodation requested." (ECF No. 32, at 5).[5]

It is undisputed that Defendant granted Plaintiff's ADA accommodation request on August 30, 2019. The evidence shows that on July 2, 2019, Plaintiff's doctor filled out a medical certification form, explaining that Plaintiff had "Equinus Deformity" and "Achillis Tendinitis," and that Plaintiff should "avoid heels" and "wear good supportive shoes" to aid her in performing her job duties. (ECF No. 26-2, at 2; 5). On August 30, 2019, Defendant notified Plaintiff that she was granted an

---

[5] In its opposition to Plaintiff's motion, Defendant requests partial summary in its favor on Counts I and II (ECF No. 32, at 11). Defendant filed its motion for summary judgment first and has only moved for summary judgment on the ground that Plaintiff should be barred by judicial estoppel. (ECF No. 24). In any event, there are disputes of material facts precluding summary judgment to either party.

accommodation under the ADA and "[p]ursuant to [her] physician's certification" she could "wear flats/good support shoes instead of heels." (ECF No. 26-3, at 1). The notification to Plaintiff further stated, "[i]f you would like to request an additional accommodation in the future or modification to your original accommodation, please contact Employee Relations immediately to discuss your options." (*Id.*).

Plaintiff argues that Defendant "prohibited the very accommodation [] Plaintiff needed" because it did not allow her to wear sneakers (ECF No. 26, at 13). Whether sneakers were permitted under Plaintiff's original ADA accommodation is in dispute. Further, the evidence of Plaintiff's doctor later "insist[ing] that the Defendant permit her to wear[] 'sketcher like soft top shoes without a heel'" is in dispute. (*Id.*).

Plaintiff was treated by her doctor on April 22, 2022, and she received a note from her doctor stating "[p]atient has achilles tendonitis and equinus secondary to poor shoegear that has caused contracture of the patient's achilles tendon. Please allow patient to wear previously approved sketcher like soft top shoes without a heel and/or similar style to them permanently due to patient's foot condition." (ECF No. 26-5, at 2). Plaintiff asserts that Defendant received the doctor's note in April of 2022 (ECF No. 26, at 7-8). Defendant contends, however, that it did not receive the doctor's note until July 22, 2022, two months after Plaintiff had

been terminated.  (ECF No. 32, at 6).  The only evidence of Defendant receiving the doctor's note is an email dated July 18, 2022.  (ECF No. 26-5, at 1).

The evidence shows Defendant granted Plaintiff's July 2019 accommodation request (although its practical application is in dispute), and honored it until December 2021.  Thereafter the evidence is conflicting as to what accommodation was permitted, whether the prior accommodation was altered, whether Plaintiff properly engaged in discussions, and when Defendant received the April 22, 2022 doctor's note, i.e., was it before July 22, 2022. Accordingly, Plaintiff's partial motion for summary judgment on Counts I and II will be denied.

**IV. Conclusion**

For the foregoing reasons, both Defendant's motion for summary judgment and Plaintiff's partial motion for summary judgment will be denied.  A separate order will follow.

                                    /s/
                    DEBORAH K. CHASANOW
                    United States District Judge